IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNA COWDRICK, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | NO. 05-0074 |

## REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Joanna Cowdrick, brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act).  The parties have filed cross-motions for summary judgment.  For the reasons which follow, it is recommended that both motions be denied and the case remanded to the Commissioner.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a forty-five (45) year-old female born on December 13, 1959 (Tr. 47).  She has a high school education, and past work experience as a waitress, hostess, account manager, account representative, and owner of a housekeeping business (Tr.

1

71, 76, 390-392).  Disability is alleged as of June 17, 1996 due to cervical and lumbar strain and a right arm injury (Tr. 47). Plaintiff's was last insured for DIB purposes on September 30, 2002 (Tr. 427).[1]

Plaintiff's application, filed on June 1, 2000[2], was denied initially, and she then requested a hearing before an Administrative Law Judge (ALJ).[3]  A hearing was commenced on August 28, 2001, at which, plaintiff, represented by counsel, testified along with a vocational expert (VE) (Tr. 382-413).  In a decision rendered September 19, 2001, the ALJ determined that plaintiff has impairments considered "severe."   The ALJ, however, further determined that plaintiff retains the residual functional capacity to perform her past work as an account collection agent or restaurant hostess, and in the alternative can do a full range of light work.   Thus, she was determined to be not entitled to benefits (Tr. 12-26).

The ALJ's findings became the final decision of the

---

[1] In order to be entitled to DIB, plaintiff must establish that she was disabled on or prior to the date she was last insured.  See 20 C.F.R. §§ 404.130-32, 404.315) (2004).

[2] Plaintiff filed previous DIB applications in February 1997 and July 1999.  Both were denied and became final decisions when plaintiff failed to appeal those decisions.  See 20 C.F.R. § 404.955.

[3] This matter was randomly selected by the Social Security Administration to test modifications to the disability determination process.  See 20 C.F.R. § 416.1406 (b)(4)(2000). Accordingly, there was no reconsideration level of review.

Commissioner when the Appeals Council denied plaintiff's request for review on December 3, 2001 (Tr. 4-5). Plaintiff then appealed that decision to this court, and filed a motion for summary judgment. The Commissioner responded with a motion to remand the case for further administrative proceedings (Tr. 465-467). Plaintiff did not oppose the motion and this court remanded the matter back to the Commissioner.[4]

The ALJ held a second hearing on August 8, 2003, at which, plaintiff, represented by counsel, again testified along with a VE (Tr. 443-463). While plaintiff's case had been pending in this court, she filed an application for DIB on February 27, 2002. Such was denied initially (Tr. 622-626), and plaintiff requested a hearing. This matter was then consolidated with the remanded action.

The ALJ then rendered another unfavorable decision on October 27, 2003. The ALJ opined that plaintiff has "severe" impairments, but again made alternative step four and five determinations. He found plaintiff able to do her past work as a hostess at step four and able to do "nearly the full range of unskilled sedentary work and a wide range of unskilled light work" at the fifth step of the

---

[4]Specifically, on remand, the ALJ was directed to "recontact a Dr. Mohsenian to clarify claimant's limitations. The remand further stated that "[I]f clarification from Dr. Mohsenian is not possible, the ALJ will obtain a consultative mental status examination with a detailed medical source statement of the claimant's work capabilities" (Tr. 466).

evaluation.   She was, thus, not found entitled to benefits (Tr. 426-437).

This decision became the final decision of the Commissioner when the Appeals Council declined to assume jurisdiction on December 29, 2004 (Tr. 441-416).   Plaintiff then appealed that decision to this court.


## JUDICIAL REVIEW

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence.   42 U.S.C. § 405(g); <u>Pierce v. Underwood</u>, 587 U.S. 552 (1988).   "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Id</u>. at 664-65.   "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."   <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." <u>Stunkard v. Secretary of Health and Human Services</u>, 841 F.2d 57 (3d Cir. 1988), <u>quoting</u> <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982).   A

4

claimant can establish such a disability in either of two (2) ways: (1) by producing medical evidence that one is disabled per se as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Regulations No. 4, Subpart P, Appendix 1 (1987); see Heckler v. Campbell, 461 U.S. 458 (1987); Stunkard v. Secretary of Health and Human Services, 841 F.2d at 59; Kangas v. Bowen, 823 F.2d at 777; or (2) by demonstrating an impairment of such severity as to be unable to engage in "any kind of substantial gainful work which exists in the national economy." Heckler v. Campbell, 461 U.S. at 461; 42 U.S.C. § 423(d)(2)(A).

This method of proving disability requires that the claimant first show that he/she is unable to return to his/her former work due to a physical or mental impairment. Once a claimant has demonstrated that he/she is unable to perform his/her former work, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he/she is able to perform, taking into consideration the claimant's physical ability, age, education and work experience. See Kangas v. Bowen, supra; Rossi v Califano, 602 F.2d 55, 57 (3d Cir. 1979); 42 U.S.C. § 423(d)(2)(A).

This case was decided under the medical-vocational regulations which require a five-step sequential evaluation of disability claims. See generally, Heckler v. Campbell, supra; Santise v. Schweiker, 676 F.2d 925 (3d Cir. 1982). The sequential evaluation

considers in turn current work activity, the severity of impairments, the ability to perform past work and vocational factors.  20 C.F.R. §§ 404.1520 and 416.920.

In this case, the ALJ reached the fourth step of the evaluation and determined that plaintiff was capable of performing one of her past jobs.  In addition, in the alternative, the ALJ went to the fifth step of the process and decided that plaintiff was able to do nearly a full range of sedentary work and a wide range of light work.

## MEDICAL HISTORY

The relevant evidence in this case consists of medical reports which are summarized as follows:

Plaintiff had an MRI of the cervical spine on July 24, 1996. Dr. Lawrence Ratner reported the results as a "straightening of the cervical spine," and a "small central disc protrusion C5-6 interspace unassociated with any cord encroachment or compression" (Tr. 113).

Plaintiff was seen several times in July and August 1996 by an orthopedic surgeon, Dr. Harry Cooper, for neck and back pain.  On July 30, 1996, he reported that an MRI showed disc protrusion at C5-C6.  He stated that side bending and compressing the cervical spine did not produce any radicular symptoms, and that examination of the lower extremities was normal.  Dr. Cooper's impression was

acute cervical sprain and strain, C5 radiculopathy[5], and disc protrusion at C5-C6 (Tr. 116-119).

Plaintiff received a cervical epidural steroid injection at the Delaware Valley Medical Center on October 14, 1998. Dr. Jeffrey Selk gave plaintiff's preoperative diagnosis as a herniated disc at C5-6 (Tr. 105).

On January 30, 1997, plaintiff received a neurosurgical consultation by Dr. Thomas McCormick. He indicated that plaintiff had persistent neck, left arm, and left leg pain. Regarding her neck, he suspected that she had a "cervical radiculopathy probably at the C5-6 level with radiation through the arm down into the radial aspect of the hand." He opined that she was not a good candidate for surgery and recommended epidural blocking. Regarding her low back pain, Dr. McCormick stated further that it was a probable lumbar radiculopathy at the L4-5 level (Tr. 147-148).

Plaintiff had an independent orthopedic examination on March 6, 1997 by Dr. Victor Frankel. He reported that plaintiff had lumbar flexion to 40 degrees without radicular pain. Her extension, lateral bending and rotation were intact with no radicular pain. Cervical spine extension was approximately 80 percent of normal. Dr. Frankel's impression was "degenerative discogenic disease at C5-6, with no neural element compression

---

[5]Radiculopathy- disease of the nerve roots. Dorland's Illustrated Medical Dictionary, Twenty-ninth Edition, 2000, p. 1511.

whatsoever." He believed there to be no evidence of "ongoing radiculopathy," and concluded that plaintiff could return to work in a "full duty capacity" (Tr. 151-153).

Plaintiff was seen several times in 1996 and 1997 by neurologist Emil Matarese, M.D. On June 2, 1997, he indicated that since plaintiff's last visit, she had an MRI of the brain which was normal. Dr. Matarese concluded that her "neurologic work-up has been unremarkable. There is no neurologic explanation for her persistent neck and low back pain with diffuse painful paresthesias throughout the right arm" (Tr. 154-155).

Plaintiff was also evaluated by a rheumatologist, Dr. Angela Jannelli, on July 11, 1997. Dr. Jannelli noted that plaintiff was having various pains in her left leg and right ankle. She stated that plaintiff's diagnosis "appears to be fibrositis[6]," and urged her to exercise every other day (Tr. 166).

An independent medical evaluation was conducted upon the plaintiff on July 25, 1997 by Herbert Avart, D.O. He found plaintiff to have chronic pain syndrome, inappropriate illness behavior, probable enthesopathy of the right shoulder, and probable mood disorder. Dr. Avart added that plaintiff's conditions be "classified under the general heading of polyarthralgia,

---

[6]Fibrosis- the formation of fibrous tissue, as in repair or replacement of parenchymatous elements. Dorland's at 673.

8

polymyalgia[7], fibromyalgia[8], and depressed mood." He opined that these conditions should only have a "minimal" impact on her ability to work (Tr. 172-176).

Plaintiff was seen at the Foundation for Pain Management on June 30, 1997 by Thomas Costello, D.O. His impression after an examination was cervical radiculopathy, mechanical lumbar spine syndrome, and fibromyalgia. Dr. Costello recommended a trial of cervical epidural steroid injections, and an aerobic exercise program (Tr. 179-181).

Plaintiff had a CT of the lumbar spine on September 21, 1998. Dr. Robert Miller reported that at "L5-S1 there is a small right posterolateral disc herniation with mild narrowing of the right lateral recess" (Tr. 198).

On October 14, 1998, plaintiff was administered a cervical epidural steroid injection at the Pain Management Center by Dr. Jeffrey Selk. Dr. Selk noted that plaintiff had earlier received an injection which had completely resolved her pain, but it had reoccurred (Tr. 194).

Cervical spine x-rays were taken on February 28, 2000. Dr. Eric Bosworth reported that they showed "no evidence of fracture,

---

[7]Polymyalgia- myalgia affecting several muscles. <u>Dorland's</u> at 1432.

[8]Fibromyalgia- pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. <u>Dorland's</u> at 673.

subluxation or prevertebral soft tissue swelling.  The vertebral bodies are of normal stature and the disc spaces are well maintained.  The neural foramina and the C1-2 articulation are normal" (Tr. 219).

Jerry Lindenbaum, D.O.P.C., completed a Physical Capacities form on October 20, 1998, and rendered an opinion as to plaintiff's ability to perform her past jobs.  He opined that she is incapable of doing her past work as a credit customer account manager.  "She cannot sit constantly for 8 hours a day, only 30 minutes maximum, and then must move around 5-10 minutes every hour.  Also, she cannot reach, bend, squat or do any repetitive action even at waist level."  Dr. Lindenbaum noted that plaintiff had started her own business from home and had five employees working for her.  He also checked off that he believed plaintiff capable of sedentary work (Tr. 220-222).

Plaintiff was examined By Dr. B.S. Sandhu on September 27, 2000 at the request of the Pennsylvania Bureau of Disability Determination.  Dr. Sandhu noted that plaintiff had an MRI of the cervical spine just two weeks earlier which revealed a small central disk herniation at C5-6 and a small central bulging disk at C4-5 and such MRI was unchanged since 1996.  Examination of the lumbosacral spine revealed "palpable spasm and tenderness over the paraspinal muscles of the lumbar spine."  Plaintiff had a steady gait, had minimal difficulty with squatting half way down, and

10

could walk without the any assistive device.  There were also "no
palpable triggerpoints over the thigh muscles or the hip girdle
area."  Dr. Sandhu diagnosed her with cervical radiculopathy,
lumbosacral radiculopathy, and a history of fibromyalgia and panic
attacks (Tr. 330-332).

Dr. Sandhu also completed an Ability to Perform Work-Related
Physical Activities.  He opined that plaintiff is able to
frequently lift and carry 10 pounds, stand and walk 1 hour or less
total in an 8-hour workday, and sit less than 2 hours in this time
(Tr. 334-335).

Plaintiff had an MRI of the lumbar spine performed on
September 19, 2000.  Dr. Leonard Gordon reported that "no
abnormality" was seen (Tr. 512).  The next day, September 20th, she
an ENG and nerve conduction study completed.  Dr. Louis Pearlstein
wrote that the "present study is consistent with bilateral L5
radiculopathies.  There is no evidence of neuropathy on the present
study" (Tr. 513).

Plaintiff had an EMG and nerve conduction study performed on
September 28, 2000.  Dr. Louis Pearlstein wrote that the "present
study is consistent with a C6 radiculopathy on the right.  There is
no evidence of neuropathy on the present study" (Tr. 338).

On November 22, 2000, plaintiff was given a mental evaluation
by Dr. Javad Mohsenian.  He indicated that plaintiff appeared to be
in pain.  Her affect and mood were depressed and her affective

11

responses were poor.  Memory was good.  Speech was coherent and there was no evidence of psychosis.  Dr. Mohsenian's diagnostic impression was major depressive disorder and a history of panic attacks (Tr. 348-351).

Dr. Lindenbaum filled out a Physical Residual Functional Capacity Questionnaire on July 19, 2001 that had been sent to him. He noted that he had seen plaintiff weekly to monthly since 1996 and had last seen her in November 2000.  He gave her diagnoses as fibromyalgia, a protruding disc at C5-6, and C5 radiculopathy.  He also gave her prognosis as fair.  Dr. Lindenbaum circled that plaintiff often has pain or other symptoms that interfere with attention and concentration.  He indicated further that she is capable of low stress jobs pointing out that she has functioned in the past running her own business.  He opined that she is able to walk 2 blocks without pain or rest, sit 1 hour and stand for 30 minutes continuously, and sit, stand/walk a total of about 4 hours in an 8-hour workday.  She would also need to have periods of rest and the opportunity to shift positions during a workday.  He opined further that she can occasionally lift up to 10 pounds and would be expected to be absent from a job about 4 times a month due to her impairments (Tr. 375-381).

On May 13, 2002, plaintiff was given a disability evaluation by Dr. Jeffrey Perlson at the request of the Bureau of Disability Determination.  He indicated that a neurological examination showed

grip strength significantly decreased in the right hand versus the left.  Strength in the lower extremities is equal.  She can perform fine dexterity and manipulation with both hands equally and without difficulty.  Dr. Perlson added that plaintiff's problems come when she tries to lift an object heavier than a few pounds.  He stated further that he would not recommend plaintiff lifting more than 2-3 pounds on an occasional basis.  "The rest is prohibitive on the basis of clinical information at the time of the examination."  He opined that plaintiff has no limitation standing and walking as long as she has an appropriate facility to sit when the pain is severe.  "More realistically, I would permit her to walk two to three hours a day no more."  He also found plaintiff to have no limitation sitting (Tr. 528-543).

Plaintiff had sleep tests performed at the Institute for Respiratory and Sleep Medicine on October 1, 2002.  Dr. Howard Lee reported that plaintiff has some mild asthma and significant sleep apnea[9] (Tr. 574-575).

X-rays of the chest were taken on August 19, 2002.  They showed "no evidence for active disease."  She also had an MRI of the brain on October 7, 2002.  Dr. Leonard Gordon indicated that no abnormality was seen (Tr. 596-598).

---

[9]Apnea (sleep)- transient periods of cessation of breathing during sleep.  It may result in hypoxemia and vasoconstriction of pulmonary arterioles, producing pulmonary arterial hypertension. Dorland's at 114.

13

On February 24, 2003, plaintiff was given a psychiatric disability examination by Dr. Mahmood Ghahramani at the request of the Bureau of Disability Determination.  Dr. Ghahramani found plaintiff's memory impaired for remote and recent.  Her concentration was poor, judgement adequate, and she was tearful and depressed.  His diagnoses were severe major depressive disorder, panic attacks, cervical and lumbar disc disease, and a history of fibromyalgia, sleep apnea, and alcohol abuse (Tr. 599-601).

Dr. Ghahramani also checked off on an occupational form that plaintiff has no ability to use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  He further indicated that plaintiff has "fair" ability to follow work rules, relate to co-workers, use judgment, and maintain personal appearance.  Finally, in the area of making performance adjustments, Dr. Ghahramani opined that plaintiff has no ability to understand, remember, and carry out complex job instructions, "fair" ability to carry out detailed but not complex job instructions, and "good" ability to carry out simple job instructions (Tr. 602-603).

## DISCUSSION

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 924, 113 S. Ct. 1294 (1993).

In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. <u>Richardson v. Perales</u>, <u>supra</u>.

In this case, the ALJ found that the medical evidence establishes that plaintiff has an impairment or impairments considered "severe." The ALJ, however, further determined under step four of the evaluation that plaintiff retains the residual functional capacity to do her past work as a hostess. She also went on and alternately determined under step five that plaintiff is able to perform "nearly the full range of unskilled sedentary work[10] and a wide range of unskilled light[11] work."[12] She was, thus,

---

[10]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

found not to be entitled to benefits under the Act (Tr. 436-437). For the reasons which follow, this court finds that the ALJ's decision is not supported by substantial evidence, and the matter should be remanded to the Commissioner.

Plaintiff asserts that the ALJ rejected the opinions of treating and examining physicians without adequate explanation. We agree. "Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987).[13]

---

20 C.F.R. § 404.1567(a).

[11]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

[12]Specifically, the ALJ found that plaintiff had the following residual functional capacity: "Simple and repetitive work involving lifting and carrying no more than 10 pounds frequently and occasionally; sitting, standing or walking up to 6 hours each with normal breaks, and no repetitive bending" (Tr. 436).

[13]20 C.F.R. § 416.927 (d)(2) provides in part that ". . .[I]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and diagnostic techniques and is

Regarding plaintiff's treating family physician, Dr. Lindenbaum, the ALJ recognized that in a July 2001 residual functional capacity assessment, Dr. Lindenbaum opined that plaintiff could walk two blocks, sit for one hour at a time for a total of about four hours in a workday, and stand for thirty minutes at a time for a total of four hours in a workday. She would also have to be able to alternate positions, take unscheduled breaks twice a day for five to ten minutes. He added that she is able to lift 10 pounds occasionally, and would be expected to be absent four times a month (Tr. 375-381).

The ALJ explained her rationale for not giving Dr. Lindenbaum's assessment controlling weight. She stated that a basis for Dr. Lindenbaum's assessment was a herniated lumbar disc, and that plaintiff's most recent MRI study from September 2000 failed to show such herniation. However, the ALJ failed to point out there is objective evidence that plaintiff does suffer with a painful cervical condition. An EMG and nerve conduction study in September 2000 revealed a "C6 radiculopathy on the right" (Tr. 338).

The ALJ also stated in her opinion that Dr. Lindenbaum "did not explain why he found her more limited in this assessment than in his prior assessment" (Tr. 220-222). The ALJ also noted that

_____

not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. . ."

17

Dr. Lindenbaum "did not cite to any objective test results to support his assessment or comment on the large gaps between visits apparent in his contemporaneous treatment notes" (Tr. 434).

We are of the opinion, however, that instead of the ALJ simply rejecting Dr. Lindenbaum's opinions for the reasons stated above, we find that it was incumbent upon the ALJ to seek clarification and/or additional evidence from him.  20 C.F.R. § 404.1512(e) provides in part that . . . "we [Social Security Administration] will seek clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory techniques . . . "

Upon remand, the Commissioner should contact Dr. Lindenbaum and attempt to obtain further reports, treatment notes, and/or any other evidence that support his assessment that plaintiff is incapable of even sedentary work.  In addition, if the ALJ rejects Dr. Lindenbaum's assessments, a full and adequate explanation for such rejection must be given.

We also agree with the plaintiff's contention that the ALJ failed to give adequate explanations in her opinion for her rejection of the opinions of examining physicians, Drs. B.S. Sandhu, Jeffrey Perlson, and Mahmood Ghahramani.  An ALJ must give a specific factual basis for each finding.  <u>Baerga v. Richardson</u>,

18

500 F.2d 309 (3d Cir. 1974).  Moreover, simply referring to the record is insufficient.  Abshire v. Bowen, 662 F.Supp. 8 (E.D. Pa. 1986).

Plaintiff was examined by Dr. Sandhu in September 2000 at the request of social security.  He noted that a recent MRI revealed a small central disk herniation at C5-6 and a small central bulging disk at C4-5.  He diagnosed her with cervical radiculopathy and lumbosacral radiculopathy (Tr. 330-332).  He then went on and opined in an Ability to Perform Work-Related Activities form that plaintiff is unable to perform even sedentary work indicating that she is able to lift and carry 10 pounds, but can only stand and walk one hour or less in an eight-hour workday and sit less than two hours in this time (Tr. 334-335).

In her first opinion prior to the matter being remanded, the ALJ did discuss the evidence from Dr. Sandhu and found that his assessment was based on plaintiff's self-reported complaints and that he provided no clinical findings for support.  However, as noted above, Dr. Sandhu does refer to clinical findings citing an MRI of the cervical spine which showed a small central disk herniation.  In her second and current opinion, the ALJ failed entirely to discuss Dr. Sandhu's assessment and only mentioned him in the context of plaintiff's "alleged mental impairment" (Tr. 429-430).  This is inadequate, and the ALJ must consider and discuss such assessment upon remand.

In addition, the ALJ failed to explain her rejection of the assessment of Dr. Perlson. In May 2002, plaintiff was evaluated by Dr. Perlson also at the request of social security. In her opinion, the ALJ merely summarized the evidence from this evaluation and offered no rationale and/or explanation in rejecting his opinion that plaintiff was incapable of doing even sedentary work. Dr. Perlson opined that she could walk two to three hours a day and have no limitation sitting, but added that her problems come when she attempts to lift heavier objects, and is only able to lift no more than 2-3 pounds on an occasional basis (Tr. 528-543).

The ALJ's explanation of her rejection of Dr. Ghahramani's is also inadequate. Plaintiff was given a psychiatric disability evaluation by Dr. Ghahramani in February 2003, again at the direction of the state agency. He found plaintiff's memory impaired both remote and recent. Her concentration was poor, judgment adequate, and she was tearful and depressed. He diagnosed her with severe major depressive disorder (Tr. 599-601).

Dr. Ghahramani then indicated on an occupational assessment form that plaintiff has no ability to use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and to understand, remember, and carry out complex job instructions. He also found plaintiff to have "fair" ability to

20

follow work rules, relate to co-workers, use judgment, maintain personal appearance, and carry out detailed job instructions, and to have "good" ability to carry out simple job instructions (Tr. 602-603).

The ALJ, however, determined that the "evidence as a whole does not support the functional limitations reported by this one-time examining physician.  No treating physician found the extreme limitations of concentration and memory cited in this examination."  The ALJ, thus, concluded that "Dr. Gharamani's assessment is only accepted to the extent that the claimant may be limited to simple job instructions" (Tr. 430-431).

We, however, are of the opinion that the above explanation is inadequate especially considering the fact that Dr. Ghahramani examined plaintiff at the request of social security.  This matter had been previously remanded at the request of the Commissioner in order for the ALJ to re-contact Dr. Mohsenian about plaintiff's limitations.   The  remand  order  further  stated  that  "[I]f clarification from Mohsenian is not possible, the ALJ will obtain a consultative mental status examination" (Tr. 466).  It was only after Dr. Mohsenian could offer no further information concerning the plaintiff that social security requested Dr. Ghahramani to evaluate her.   The ALJ simply cannot order a comprehensive psychiatric evaluation from Dr. Ghahramani and then reject his findings stating that the record doesn't support such without a

more comprehensive analysis.   Thus, upon remand, the ALJ must reconsider the assessment given by Dr. Ghahramani and if he/she chooses to reject such, he/she must render a full and adequate explanation.

In addition, we are also of the opinion that Dr. Ghahramani's mental assessment should be reconsidered in combination with the physical limitations indicated by Drs. Lindenbaum, Perlson, and Sandhu.  In order to do such, the ALJ should obtain the testimony of a medical expert (ME) in determining whether plaintiff's impairments both physical and mental, considered in combination, were disabling on or prior to September 30, 2002, the last date she was insured for DIB purposes.[14]

A reviewing court may remand where relevant, probative, and available evidence was not explicitly weighed in deciding plaintiff's claim.  Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).

Therefore, the court makes the following:

---

[14]We are well aware that this matter has been remanded once and that another remand will further delay a final determination. We do not, however, find that the current record supports a granting of summary judgment for the plaintiff.  Rather, another remand is justified for the reasons outlined above.

**<u>RECOMMENDATION</u>**

AND NOW, this          day of                         , 2005,
it is respectfully **RECOMMENDED** that the Cross-Motions for Summary
Judgment be **DENIED** and the matter **REMANDED** to the Commissioner of
the Social Security Administration.

_____
**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**